UNITED STATES, Appellee,

v.

Sergeant Daniel W. RICHARDSON, 575–48–7031, United States Army, Appellant.

ACMR 8801211.

U.S. Army Court of Military Review.

23 July 1990.

For Appellant: Captain Alan M. Boyd, JAGC (argued), Captain Thomas A. Sieg, JAGC (on brief).

For Appellee: Captain Jonathan F. Potter, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Gary L. Hausken, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM: *

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of violating a lawful general regulation, at-

* Judge Peter J. Kane took final action on this

tempted espionage, unauthorized sale of military property, unauthorized disposal of military property, and larceny of government property (two specifications) in violation of Articles 92, 106a, 108, and 121 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892, 906a, 908 and 921 (1982 and Supp. III). His approved sentence includes a bad-conduct discharge, confinement for ten years, forfeiture of $300.00 pay per month for 120 months, and reduction to the grade of Private E1.

The appellant raises four issues on appeal. He contends that the evidence of record is insufficient to support his conviction for violating a lawful general regulation; that the military judge gave a prejudicially erroneous instruction for the offense of attempted espionage; that the evidence of record is insufficient to support his conviction for attempted espionage; and that the military judge erred by taking judicial notice of facts which were in dispute. We shall address appellant's contentions in turn.

In the summer of 1986, an individual—later identified as the appellant—contacted the Soviet embassy in Washington, D.C., and offered to sell information concerning the M1 Abrams tank. The Soviets were not interested; the Federal Bureau of Investigation was.

Counter-espionage agents of both the Federal Bureau of Investigation (FBI) and the Department of Defense initiated an investigation and by 3 August 1987 they had identified the appellant as the individual who had placed the call. The agents placed the appellant under surveillance for several months in an effort to determine whether the appellant was actively engaged in espionage. Their surveillance was inconclusive and they decided to conduct a "sting" operation in order to develop a prosecutable case.

On 12 January 1988, an FBI agent contacted the appellant and identified himself as "Vladimir Kosov," an "employee of the Soviet Military Office in the Soviet embassy," and stated:

case prior to his reassignment from the court.

And I'm returning your call. Remember you called us some time ago, and, ah, you tried to talk to my colleagues, and, ah, they didn't seem to understand you very well. You mentioned you had some business to discuss about the M–1 tank, remember you called us three times?

Subsequently, the two set up a rendezvous at which the appellant passed information to "Vladimir" about the M1 Abrams tank in return for United States currency.

I

The regulation in issue is Army Reg. 381–12, Military Intelligence: Subversion and Espionage Directed against U.S. Army (short title: SAEDA), para. 8 (1 July 1981) [hereinafter AR 381–12].[1] This provision of the regulation requires soldiers to report attempts by unauthorized persons to obtain classified or unclassified national defense information.

The appellant contends that the regulation "did not [intend to] criminalize situations where a soldier is set up by a Government agent *pretending* to be a foreign spy to get evidence of attempted espionage ... It does not criminalize the failure to report persons whom a soldier may believe or suspect to be an 'unauthorized person' unless that person is *actually* 'unauthorized.'" (Emphasis added). The appellant argues that "Vladimir," an FBI agent, was authorized to handle classified information because he had a top secret clearance. The appellant concludes that the Government's evidence is therefore insufficient to support a finding that the agent was an "unauthorized person" within the meaning of the regulation.

■ The appellant is arguing the defense of impossibility. Although impossibility does not bar conviction for an attempt charge, *see United States v. Allen*, 27 M.J. 234, 240–241 (C.M.A.1988), it may preclude conviction of non-attempt offenses. *See, e.g., United States v. Reoch*, 24 M.J. 231 (C.M.A.1987) (summary disposition). Additionally, there is precedent to the effect that an accused cannot commit a "two-person" crime when the coactor is a criminal investigator who is otherwise acting in performance of his duties. *See United States v. West*, 13 M.J. 800 (A.C.M. R.1982) (conspiracy conviction will not lie where the co-conspirator was a law enforcement agent; no conspiracy existed as a matter of law). However, we need not consider these issues in the case at bar. We find a more compelling basis for setting aside the appellant's conviction for this offense.

■ In *United States v. Williams*, this court held that noncompliance with disclosure requirements may not be criminally punished if the disclosure would be incriminating as the Fifth Amendment privilege against self-incrimination forbids the imposition of a criminal penalty for failure to incriminate oneself. *United States v. Williams*, 27 M.J. 710, 716 (A.C.M.R.1988), *aff'd*, 29 M.J. 112 (C.M.A.1989). More to the point, the United States Court of Military Appeals has ruled:

[W]here, at the time the duty to report arises, the witness to [the crime] is already an accessory or principal to the illegal activity that he fails to report, the privilege against compelled self-incrimination may excuse his non-compliance.

*United States v. Heyward*, 22 M.J. 35, 37 (C.M.A.1986). *See also United States v. Reed*, 24 M.J. 80 (C.M.A.1987). The case at bar clearly falls within the ambit of *Heyward* and *Williams*.

1. AR 381–12, paragraph 8, provides in pertinent part:

8. *Incidents and situations to be reported.* Reporting of incidents and situations described in this paragraph is mandatory. Reports will comply with the procedures given in paragraph 9. Failure to report such incidents or situations constitutes a violation of this regulation and may provide the basis for disciplinary action under the Uniform Code of Military Justice (UCMJ) or other authority as appropriate. Incidents and situations are as follows:

a. Attempts by unauthorized persons to obtain classified or unclassified information concerning US Army facilities, activities, personnel, or materiel through questioning, elicitation, trickery, bribery, threats, or coercion, either through direct or indirect personal contacts or correspondence.

At the time "Vladimir" contacted the appellant, the appellant had already committed a criminal offense punishable by the Code. His initial contact and offer of information to the Soviet embassy in the summer of 1986 was an act of attempted espionage. To the best of the appellant's knowledge, "Vladimir's" telephone call was a response to his earlier contact. Under the facts of this case, "Vladimir's" return call was the direct result of the appellant's earlier offense of attempted espionage. Moreover, the Government relied on the fact of this prior contact to rebut the appellant's entrapment defense. Had the appellant complied with the regulation and reported this subsequent contact, the appellant would have furnished the Government with evidence directly implicating him in this nefarious venture. *See United States v. Williams,* 27 M.J. at 717 (citing *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 *rehearing denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972)). In this context, this court has held that the constitutional privilege against self-incrimination would preclude the appellant's conviction.

Further, the Court of Military Appeals has stated in dicta that convictions for both failure to report "a crime" and for the crime not reported may not stand. *United States v. Heyward,* 22 M.J. at 37. While that court has not offered a legal basis for this statement of "law," it presumably rests somewhere in the realm of multiplicity, double jeopardy, or the privilege against self-incrimination. Accordingly, we will set aside the appellant's conviction for this offense.

## II

█ In advising the members of the court on the elements of the offense of espionage, the military judge instructed the members:

"[I]ntent, or reason to believe" that the information is "to be used to the injury of the United States or to the advantage of a foreign nation" means that the accused acted in bad faith, *or otherwise without authority* with respect to information that is not lawfully accessible to the public. [Emphasis added].

The appellant argues that the offense of espionage is a "bad-faith" offense and that the judge's instruction in the alternative ("or without authority") converted the offense to one of "strict liability." *See generally* Manual for Courts–Martial, United States, 1984 [hereinafter M.C.M., 1984], Part IV, paragraph 30a a and b(1)(c) (C2, 15 May 1986). In essence, appellant's contention is premised upon the notion that the military judge's instruction converted this "specific intent" offense into one of "general intent." We disagree. The offense of espionage requires proof beyond reasonable doubt that the *actus rea* alleged in support of the charge was committed with "intent or reason to believe that [the information imparted] is to be used to the injury of the United States or to the advantage of a foreign nation." Article 106a, UCMJ.

The military judge's instruction is prescribed by the Military Judges' Benchbook. Dep't of Army, Pam. 27–9, Military Judges' Benchbook, para. 3–64 (C2, 15 October 1986). It may be that the instruction "or otherwise without authority" might mislead a fact-finder as to the element of specific intent or bad-faith. However, there is no possibility that it did so in the case at bar.

Even assuming that the instruction might potentially mislead a fact-finder, it was clearly harmless under the facts of the case at bar. The Government's case rested upon affirmative proof of bad faith and not on the mere lack of authority. This element was proven with evidence that the appellant was dealing with a purported representative of a country, the Soviet Union, which has been a traditional adversary of the United States Armed Forces and with evidence that the appellant was selling for mere money information regarding the Army's main battle tank. We find no possibility that the fact finder might have inferred bad faith or intent from an absence of authority alone. Accordingly, if the instruction is legally deficient in some respect, it did not affect the findings in this court-martial.

## III

■ The appellant contends that evidence of record is insufficient to support his espionage conviction because there is no evidence of record that the information he conveyed to "Vladimir" was not accessible to the public. Citing *United States v. Heine*, 151 F.2d 813 (2d Cir.1945), *cert. denied*, 328 U.S. 833, 66 S.Ct. 975, 90 L.Ed. 1068 (1946), he argues that such evidence is essential to establish the element of intent or bad faith. We disagree.

In *Heine*, a conviction for espionage was reversed because the "national defense" information communicated was gleaned from magazines, trade journals and other periodicals within the public domain.[2] *United States v. Heine*, 151 F.2d at 815. The *Heine* court's decision rested upon a Supreme Court analysis of a federal statute which was the precursor to Article 106a. In *Gorin v. United States*, the Court stated:

> The obvious delimiting words in the statute are those requiring "intent or reason to believe that the information to be obtained is to be used to the injury of the United States, or the advantage of any foreign nation." This requires those prosecuted to have acted in bad faith. The sanctions apply only when *scienter* is established. Where there is no occasion for secrecy, as with reports relating to national defense published by authority of Congress or the military departments, there can, of course, *in all likelihood be no reasonable intent to give an advantage to a foreign government.*

*Gorin v. United States*, 312 U.S. at 27–28, 61 S.Ct. at 434 (footnotes omitted) (emphasis added).

Contrary to the appellant's interpretation of the *dicta* in *Gorin* and the decision in *Heine*, the offense of espionage does not require proof of a negative averment. These decisions stand for the simple proposition that an inference of bad faith on the part of the accused may not be justified where the "national defense information" alleged in the charge is generally accessible to the public or has been published to the public at large by the United States government.

■ However, the gravamen of the offense is the *mens rea* with which the accused has acted; not the impact or effect of the act itself. An accused's specific intent or bad faith is not negated by later discovery *after the fact* that the information was generally accessible to the public or could have been obtained. In this context, the matter is nothing more than the defense of legal or factual impossibility, a defense which has been specifically rejected for an attempted offense. *See United States v. Byrd*, 24 M.J. 286, 292 (C.M.A. 1987). As espionage is defined by Article 106a, it is a pure "attempt" offense—an offense which will lie solely on the intent with which an accused has acted and without regard to the success or failure of his actions to accomplish the intended ends. Article 106a, UCMJ; *see* M.C.M., 1984, Part IV, paragraph 30a a b (C2, 15 May 1986).

In the case at bar, there is no evidence of record which would suggest that the appellant acted with the belief that the information was generally accessible to the public. To the contrary, the fact that he offered to sell the information indicates that it was not generally available to the public. Further, the evidence of record fails to establish that the information was in fact generally accessible to the public. Finally, the conduct proscribed by the statute does not rest upon any security classification, but embraces any communicative matter "relating to the national defense."

---

**2.** The *Heine* court, citing *Gorin v. United States*, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941), made several statements to the effect that it was lawful to transmit to "citizens of a friendly foreign power" any information which had been lawfully disseminated in the continental United States. *United States v. Heine*, 151 F.2d at 815–816. "[W]hen the information has once been made public, and has thus become available in one way or another to any foreign government, the 'advantage' intended by the [statute] cannot" be found from the gathering, collating and reporting of such information. *United States v. Heine*, 151 F.2d at 817.

The *Heine* court did affirm the appellant's conviction for failing to register as an agent of a foreign government.

## IV

The military judge took judicial notice that, "In the military community, those documents known as technical manuals and student training manuals are only to be provided to those who have a need to know." He so instructed the members, but informed them that they could reject this piece of "evidence." The appellant argues that the military judge erred in taking judicial notice of this adjudicative "fact" over defense objection because the parties litigated the factual issue of whether the matters passed to "Vladimir" were classified or handled in the manner of sensitive information. The appellant contends that he was prejudiced because judicial notice of the "need to know" nature of the information imbued them with the stamp of "classified" information and thus misled the members to resolve the issue of public accessibility adversely to him. The appellant's argument actually embraces two issues, neither of which has merit.

### A

■ A threshold issue is whether the factual matter was properly susceptible of judicial notice. M.C.M., 1984, Military Rule of Evidence 201 [hereinafter Mil.R.Evid. 201] does not limit the power to take judicial notice to those facts "commonly" or "universally" known. Mil.R. of Evid. 201(b) permits the military judge to take judicial notice of any fact not subject to reasonable dispute. A fact is not subject to reasonable dispute whenever it is "generally known universally, locally, or in the area pertinent to the event" or whenever it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Mil.R. Evid. 201(b).

■ The evidence of record establishes and the appellant concedes that of the documents transferred to "Vladimir," "at least three of the diagrams were from a technical manual marked 'For Official Use Only.'" Further, there is evidence of strict, regulatory guidelines for the disposal and destruction of the manuals. These facts were neither disputed nor contested by the appellant. Accordingly, we find that the matter was appropriate for judicial notice.

■ We add, however, that the judicially noticed fact in issue is not a "generally known," universal truth. See Mil.R.Evid. 201(b)(1). Technical manuals and student training materials are not as a matter of course issued on a need to know basis. To the extent that the judicially noticed fact sounds in the universal, it is an incorrect statement. However, the appellant was not prejudiced by the superficially universal phrasing of the judicially noticed "fact." The fact finders were tasked with making determinations concerning *particular* technical manuals and student training materials and the noticed fact was not incorrect with respect to the manuals and training materials in evidence.

### B

Appellant's assignment of error also presumes that the members resolved against him the issue of public accessibility—a factual issue which was in dispute—because they equated the phrase "need to know" with a security classification. In this respect, the appellant's assignment of error rests upon the sufficiency and adequacy of instructions and not upon the fact judicially noticed.

■ The espionage statute is not worded so restrictively that it applies only to information bearing a national security classification. To the contrary, it embraces any matter "relating to the national defense." The term "national defense" is "a generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness." *Gorin v. United States*, 312 U.S. at 28, 61 S.Ct. at 434. As the military judge correctly instructed the members:

> You do not see anywhere in the elements of this offense as alleged ... that the information transmitted must be classified. That's not an element. It doesn't have to be classified information.

■ Whether a particular matter of information is "related to national defense"

**1246**

is for the fact-finder to determine beyond reasonable doubt. However, a finder of fact may accept proof that a document or matter has been given a security classification as *prima facie* evidence of an accused's bad faith in delivering such a document to the representative of a foreign government. By definition, the unauthorized disclosure of classified information may cause serious or even grave damage to our national defense. Thus, the element of bad faith or intent may be inferred from the classified nature of the information alone. A security classification does *not*, however, establish a presumption of bad faith or intent.

 The instructions on the elements of intent and public accessibility were specifically requested by counsel. Counsel did not request further instructions, object to those given, or suggest the need for clarification. The military judge properly instructed the members:

> [T]he element of the offense of espionage is that the accused did so with intent or reason to believe that the matter that he's transmitting or communicating would be used to the injury of the United States or to the advantage of a foreign nation. That's the aspect of the information that is relevant, not whether or not it's classified. Now you can see, I think, that frequently whether or not something is classified or not certainly is an aid in your making that determination of that element, but it's not an absolute determinative—it's a factor to be considered and these are matters for you to determine.

The military judge also advised the members that the element of intent or reason to believe "means that the accused acted ... with respect to information that is not lawfully accessible to the public."

In light of the foregoing instructions, we find that the judicially noticed fact did not mislead the members. First, the appellant was acquitted of another specification which alleged the passing of eleven pages of student training material and seven pages of wiring diagrams, a fact indicating that they did not attribute to this "fact"

any weight. Second, the alleged documents were, as noted above, marked "For Official Use Only" and were to be disposed of in a controlled manner. Third, the evidence clearly established that these documents did not bear a national security classification. Fourth, there is no evidence suggesting that any of the manuals in the case at bar had been released to the public or that the appellant believed as much. Finally, the fact that the appellant offered the documents for sale to "Vladimir" belies the appellant's assertion that the documents were accessible to the public: the appellant placed a monetary value on these documents which far exceeded that of documents within the public domain. We find that the judicially noticed fact did not mislead the members to resolve against the appellant the question whether the documents were within the public domain.

**V**

We have considered the issues personally asserted by the appellant. To the extent that these issues are not addressed in our decision today, we find them without merit. We have considered the appellant's allegation of ineffective assistance of counsel and find that, even if the appellant's trial defense counsel had engaged in a more exhaustive pursuit of the appellant's I-was-conducting-my-own-investigation defense, such efforts would have not resulted in a verdict or sentence more favorable to the appellant.

On the basis of the error noted, the finding of guilty of Charge I and its Specification are set aside and Charge I and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms the sentence.