UNITED STATES, Appellee,

v.

Daniel W. RICHARDSON, Sergeant,
U.S. Army, Appellant.

No. 65,390.
CM 8801211.

U.S. Court of Military Appeals.

Argued May 7, 1991.

Decided Sept. 12, 1991.

For Appellant: *Captain Alan M. Boyd* (argued); *Lieutenant Colonel Russell S. Estey* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Jonathan F. Potter* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas* (on brief).

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, a general court-martial, consisting of officer and enlisted members, convicted appellant of violating a general regulation; attempted espionage; unauthorized sale and disposition of military property; and larceny, in violation of Articles 92, 106a, 108, and 121, Uniform Code of Military Justice, 10 USC §§ 892, 906a, 908, and 921, respectively. He was sentenced to a bad-conduct discharge, confinement for 10 years, forfeiture of $300.00 pay per month for 120 months, and reduction to E–1. The convening authority approved the adjudged sentence.

In light of this Court's decision in *United States v. Heyward*, 22 MJ 35 (CMA), *cert. denied*, 479 U.S. 1011, 107 S.Ct. 656, 93 L.Ed.2d 710 (1986), the Court of Military Review set aside the findings of guilty of Charge I and its specification (violating a general regulation) and dismissed the

Charge. The remaining findings were affirmed, as was the adjudged sentence. 30 MJ 1239 (1990). Appellant then petitioned this Court and we granted review of the following issues:

## I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY INCORRECTLY INSTRUCTING THE PANEL ON THE INTENT REQUIREMENT WITH RESPECT TO THE ATTEMPTED ESPIONAGE CHARGES (CHARGE II).

## II

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY HOLDING THAT ANY INSTRUCTIONAL ERROR MADE WITH RESPECT TO THE INTENT REQUIREMENT FOR ATTEMPTED ESPIONAGE WAS HARMLESS.

## III

WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILTY TO ATTEMPTED ESPIONAGE (CHARGE II, SPECIFICATION 1).

## IV

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY TAKING JUDICIAL NOTICE OF CRITICAL FACTS REASONABLY DISPUTED AT TRIAL.

In July 1986, an anonymous caller telephoned the Soviet Embassy in Washington, D.C., and offered information about the M-1 Abrams tank, our nation's primary battle tank. Although personnel at the Soviet Embassy rebuffed the unknown caller, the Federal Bureau of Investigation caught wind of the attempted transfer of information, and an investigation ensued. More than a year later, on August 3, 1987, U.S.

counterintelligence agents succeeded in identifying appellant as the 1986 caller. Then the FBI and the Army Intelligence and Security Command initiated "ground" surveillance of appellant. From September 1987 through January 1988, appellant was followed at various times for certain periods. However, the surveillance proved inconclusive.

It was discovered that appellant had experienced some financial difficulties, including numerous gambling debts, yet there was no evidence that any information was passed or that appellant received any large, unexplained amounts of money.

With the surveillance operation yielding no evidence, the investigating agencies initiated a "sting" operation. One and a half years after appellant's phone call to the Soviet Embassy, in the summer of 1986, an FBI agent, posing as a Soviet official, began the operation by contacting appellant on January 12, 1988. The agent introduced himself as "Vladimir Kosov" from the Soviet Embassy's Military Office. "Vladimir" told appellant that he was returning appellant's call of July 1986. The undercover agent repeatedly made reference to appellant's offer to provide information about the M-1; he referred to it as the "proposal." After subsequent phone calls, the two met at a nearby hotel room.

There, appellant told "Vladimir" that he wanted to get back at the Army for "screwing [him] over," and he claimed he was an instructor of the electrical system of the M-1 and would be able to obtain much information in return for $50,000. The two agreed to the gist of the operation; appellant would provide information and "Vladimir" would forward it to his superiors. Appellant left the hotel room waiting for a confirmation from "Vladimir." When this confirmation was received, appellant prepared the information.

■ He gathered and prepared five pages of unclassified schematic diagrams and an unclassified electronic circuit board, all relating to and part of the M-1 tank.*

---

* These documents were "unclassified" in the tra-

ditional sense. The Court of Military Review

On January 13, 1988, he placed the material in a brown towel and deposited the bundle behind "Vladimir's" hotel for pick up. The next day, January 14, 1988, while appellant thought the "Soviets" were looking at the information, he met "Vladimir" at a hotel for an advance payment. At this meeting, appellant provided "Vladimir" with another unsolicited, unclassified document also relating to the M–1. Appellant received $1500.00 from "Vladimir," exchanged receipts for the money, and left the hotel room. In the hotel hallway, government agents immediately arrested appellant and conducted a fake arrest of "Vladimir."

Immediately thereafter, appellant waived his rights and consented to be interviewed by the agents. He claimed he had been *trying to catch a spy to make up for a recent reduction-in-rank* suffered as a result of nonjudicial punishment (Art. 15, UCMJ, 10 USC § 815). He said that, when he was arrested, he was on his way to report the events to CID (Criminal Investigation Command), with the money and a receipt he had had the Soviet agent sign. Appellant also stated that he believed the information he had given the Soviet agent was not classified and would not harm the United States, and that this was "the truth."

Issues I & II require us to consider whether the military judge correctly instructed the members on the elements of proof of attempted espionage, and if not, whether the erroneous instruction was "harmless."

█ The Espionage statute governing military members is found in Article 106a, UCMJ, 10 USC § 906a. It tracks the language of 18 USC § 794(a). H.R.Conf.Rep. No. 235, 99th Cong., 1st Sess. 424–25 (1985), reprinted in 1985 U.S.Code Cong. & Admin.News 472, 571, 577. Article 106a provides in part:

> (a)(1) Any person subject to this chapter who, *with intent or reason to believe that it is to be used to the injury of the United States* or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to communicate, deliver, or transmit, to any entity described in paragraph (2), either directly or indirectly, anything described in paragraph (3) shall be punished as a court-martial may direct, . . . .

(Emphasis added.)

Regarding the element of intent, the military judge gave the following instruction:

> Now, with respect to the elements of espionage, "intent, or reason to believe" that the information is "to be used to the injury of the United States or to the advantage of a foreign nation" means that the accused acted in bad faith, *or otherwise without authority* with respect to information that is not lawfully accessible to the public.

(Emphasis added); *see* para. 3–64A, Military Judge's Benchbook at 3–136.1 (Dept. of the Army Pamphlet 27–9 (Change 2, 15 October 1986)).

It is the inclusion of the language "or otherwise without authority" which appellant argues changes the offense from one requiring "scienter" or guilty knowledge to one of strict liability which gives rise to the issue before us. Appellant contends that the members were instructed that they could find appellant guilty of attempted espionage solely because he acted without authority. Thus, the Government was relieved of its burden to prove that appellant

---

found that the classification of the documents was not of decisional importance because "[t]he espionage statute is not worded so restrictively that it applies only to information bearing a national security classification." 30 MJ 1239, 1245 (1990). While that statement is true, the lack of security classifications places a burden on the Government to show that the information (1) is not of the type normally available to the public; (2) is of the type whose release would injure the United States; or (3) would be

advantageous to a foreign government. As Judge Learned Hand stated in the seminal case of *United States v. Heine,* 151 F.2d 813, 817 (2d Cir.1945):

> [W]hen the information has once been made public, and has thus become available in one way or another to any foreign government, the "advantage" intended by the section cannot reside in facilitating its use by condensing and arranging it.

either intended to injure the United States or give an advantage to the enemy, or that he had reason to believe that his acts would do so. Appellant further claims that his good-faith defense was nullified by the instruction.

The instruction obviously comes from paragraph 30a c, Part IV, Manual for Courts–Martial, United States, 1984 (Change 2). The intent requirement is explained as follows:

(1) *Intent.* "Intent or reason to believe" that the information "is to be used to the injury of the United States or to the advantage of a foreign nation" means that the accused acted in bad faith or otherwise without authority with respect to information that is not lawfully accessible to the public.

We are called upon to decide whether this is a correct explanation of the meaning of the "intent" element. The problem with the explanation (and therefore the instruction) is use of the disjunctive "or." Because of this, the instruction reads " 'Intent' ... means that the accused acted ... without authority."

The Supreme Court, construing similar language which existed in a prior version of 18 USC § 794(a), held:

The obvious delimiting words in the statute are those requiring "intent or reason to believe that the information to be obtained is to be used to the injury of the United States, or to the advantage of any foreign nation." This requires those prosecuted to have acted in bad faith. The sanctions apply only when *scienter* is established.

*Gorin v. United States,* 312 U.S. 19, 21 n. 1, 27–28, 61 S.Ct. 429, 431 n. 1, 433–434, 85 L.Ed. 488 (1941) (footnote omitted).

Although certainly proof that one acted "without authority" is evidence from which a factfinder may infer criminal intent or "bad faith," and conversely proof that one acted with authority is probably conclusive proof of good faith, the mere fact that one acted without authority does not necessarily equate with the requisite intent required for an espionage conviction. There is noth-

ing in the legislative history or subsequent case law which suggests that the requirement for bad faith or criminal intent has been lessened to the degree where one may be guilty of espionage merely for disseminating information "without authority." *See United States v. Rosenberg,* 195 F.2d 583, 592 (2d Cir.), *cert. denied,* 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652 (1952); *United States v. Heine,* 151 F.2d 813 (2d Cir. 1945), *cert. denied,* 328 U.S. 833, 66 S.Ct. 975, 90 L.Ed. 1068 (1946). Accordingly, we agree with appellant that the instruction to the court members was error.

■ Although the Court of Military Review did not specifically find the instruction to be error, it did conclude that

the instruction ... might mislead a factfinder as to the element of specific intent or bad-faith. However, there is no possibility that it did so in the case at bar.

30 MJ at 1243.

We respectfully disagree with the Court of Military Review.

First, it is uncontroverted in this case that appellant was acting "without authority." The only question for the court members was whether his "unauthorized" acts were intended to injure the United States or whether he had reason to believe or intended that the documents would provide an advantage to the Soviet Union. Notwithstanding the fact that the Government presented an overwhelming factual case against appellant, including video recordings of the transactions, he is nevertheless entitled to a correct instruction on this extremely key element of "intent." *See* Art. 51(c), UCMJ, 10 USC § 851(c); RCM 920(e)(1), Manual, *supra; United States v. Mance,* 26 MJ 244 (CMA), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988).

Second, a great deal of focus in this trial was on the classification of the documents and whether the documents were available to the public. The Court of Military Review concluded that the military judge erroneously took judicial notice of the classified nature of technical manuals and stu-

dent training materials, exactly the types of material handed by appellant to the undercover sting agent. However, the court concluded that this did not matter because the judicially noticed fact was correct "with respect to the" pertinent documents in the case. 30 MJ at 1245. This holding misses the point. Judicial notice puts a stamp of judicial authority on the evidence and effectively destroys an accused's right to "reasonably dispute" the evidence. Mil.R.Evid. 201, Manual, *supra.*

Last, the Court of Military Review concluded that, in any event, it really did not matter if the documents were classified or whether they were readily available to the public. It instead opined that

> the gravamen of the offense is the *mens rea* with which the accused has acted; not the impact or effect of the act itself. An accused's specific intent or bad faith is not negated by later discovery *after the fact* that the information was generally accessible to the public or could have been obtained. In this context, the matter is nothing more than the defense of legal impossibility, a defense which has been specifically rejected for an attempted offense. *See United States v. Byrd,* 24 MJ 286, 292 (CMA 1987).

30 MJ at 1244.

We affirmed the *actus reus* analysis in *United States v. Church,* 32 MJ 70, 73 (CMA 1991) [*see also* 32 MJ at 74 (Sullivan, C.J., concurring)]. However, we did so in the context of permitting the acts to prove the element of an "overt act" necessary to convict one of an attempt offense. In the case at bar, the overt act is clearly proved by the video recordings. What is in issue is appellant's intent. Thus, the correctness of the military judge's instruction and the language of the Manual for Courts–Martial are really what is in issue.

To put it simply, was appellant convicted because

(a) he was attempting to injure the United States by giving the Soviet Union an advantage by selling them vital national-defense information which was not available to the public and which would cause injury and/or give a foreign country an advantage? or

(b) he gave "without authority" some documents which had been judicially noticed as being "For Official Use Only" to an undercover agent disguised as a Soviet Agent?

Based on this record, we are not convinced that the erroneous instruction was harmless. We are convinced, however, that appellant's conviction for the larceny and unlawful disposition of Government property (Charges III and IV and their respective specifications) was fairly decided by the court-martial. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Army Court of Military Review as to specification 1 of Charge II and Charge II and the sentence is reversed. The findings of guilty thereon and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered. If a rehearing on specification 1 of Charge II and Charge II is deemed impracticable, that specification and Charge may be dismissed, and a rehearing on sentence based on the remaining findings of guilty may be ordered.

Senior Judge EVERETT concurs.

SULLIVAN, Chief Judge (concurring in part and dissenting in part):

I must dissent with regard to the instruction on espionage. I agree with the Court of Military Review that, if error occurred in this instruction, it was harmless. The instruction should be evaluated in light of the evidence of record and not in a vacuum. Here the prosecution offered evidence that appellant believed his actions would harm the Government, and the accused offered evidence of his "good faith" as a spy catcher. The challenged "or otherwise without authority" phrase of the instant instruction was not an issue in this case, so any error in its wording should be ignored. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).