**UNITED STATES, Appellee,**

v.

**Sergeant Lionel BROUSSARD, 435–21–1554, United States Army, Appellant.**

**ACMR 9100434.**

U.S. Army Court of Military Review.

17 Aug. 1992.

For Appellant: Major James M. Heaton, JAGC, Captain Mark L. Toole, JAGC (on brief).

For Appellee: Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Timothy W. Lucas, JAGC, Captain Sheila E. McDonald, JAGC (on brief).

Before CREAN, WERNER, and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant was found guilty, contrary to his pleas, by a military judge sitting as a general court-martial of attempted kidnapping, escape from confinement, forcible sodomy, assault consummated by a battery (three specifications), indecent acts, kidnapping, and disorderly conduct, in violation of Articles 80, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 925, 928, and 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for eight years, forfeiture of $400.00 pay per month for 96 months, and reduction to Private E1.

The charges basically stem from marital problems between the appellant and his wife, Carolyn, who worked as the Chief of Billeting at Ramstein Air Base, Germany. The Broussard's were having severe marital problems and Carolyn moved out of the family quarters and was temporarily staying in the guest quarters at Ramstein. On 28 October 1990, the appellant came to the billeting office to see his wife. They argued and the appellant slapped her in the face and tried to choke her (one specification of assault and battery).

On 7 November 1990, the appellant again returned to the Ramstein billeting office looking for his wife. He went to the room she was using and loudly knocked on the door. When Mrs. Broussard opened the door, the appellant rushed in yelling at her. They struggled in the room as Mrs. Broussard tried to grab the room key so that the appellant could not lock them in the room. The appellant bent her hand back and grabbed her arm as they wrestled for the key (one specification of assault and battery). The commotion was so loud, a major staying in a room across the hall came out to inquire about the disturbance. He knocked on the door of Carolyn's room and told the appellant to step out into the hallway. The appellant came out of the room still making a commotion. As he stepped out, Carolyn slapped the appellant in the face. Other occupants of the lodging facility came out of their rooms into the hallway because of the disturbance. From this incident, the military judge found the appellant guilty of an assault consummated by a battery on Mrs. Broussard and disorderly conduct.

As a result of these incidents, the appellant's battery commander ordered him to move out of the family quarters and into the barracks. Mrs. Broussard was advised by the battery commander that she could reoccupy the family quarters after 1200 hours on 12 November 1990. On that day, at approximately 1400 hours, Mrs. Broussard and the couple's seventeen-month-old daughter returned to the quarters. She locked the door behind her, but the quarters were dark since the roulladens had been rolled down and all of the lights turned off. She started to open the roulladens and turn on lights when she was grabbed from behind and a scarf thrown over her head. As she scuffled with her assailant, she looked out from under the scarf and saw the tip of a knife held by the assailant. She was pulled into a bedroom and when the scarf was removed, she learned the assailant was her husband, the appellant. He made her undress, lie on a mattress he had taken off the bed and put on the floor, and he tied her arms and legs to a radiator and dressers in the room with cord he had already prepared by cutting it into lengths. He tried, but was unable, to have normal vaginal sexual intercourse with her. While sitting on her chest and still brandishing the knife, he threatened her for not performing to his specifications. He made her perform fellatio on him. He then licked her vagina. After permitting her to get up and feed their daughter, he brought her back into the bedroom, retied her arms and legs and had vaginal sexual intercourse with her. Based on this incident, the military judge found the appellant guilty of assault consummated by a battery, kidnapping, committing an indecent act, and forcible sodomy.

After Mrs. Broussard reported this incident to the battery commander, the appel-

lant was placed in pretrial confinement at the Mannheim Confinement Facility. On 17 December 1990, while being escorted from the confinement facility by unit guards to some appointments outside the confinement facility, the appellant was able to slip away and escape.

At approximately 0530 hours on 18 December 1990, a thirteen-year-old girl was delivering newspapers to U.S. military families in Weilerbach, Germany, located near Kitzingen, Germany. A red volkswagen with German license plates passed her a few times. She attempted to stay away from the car, but it finally moved in front of her. She moved away from the car, but the occupant got out of the car, grabbed her, and forced her into the car. Her assailant was wearing a military battle dress uniform with no rank insignia, and white tennis shoes. She was able to clearly see his face and features and he spoke to her in English. Her assailant put her into the driver's side of the car and she crawled over to the passenger side. The assailant held her by the arm and had his other arm wrapped around her neck. She was able to struggle free, open the passenger side door, get out, and run to a house occupied by a U.S. Army first sergeant and his family.

The appellant was seen that morning by a relative of his wife's in the same vicinity of this incident. Later that same day, the appellant returned on his own to the Mannheim Confinement Facility. He was wearing a military battle dress uniform without insignia, and white tennis shoes. He also had a ticket for the German train system from Heidelberg to Kitzingen in his pocket.

The appellant was a suspect in this incident. Three different photographic line-ups were used and the victim immediately identified the appellant as her assailant each time.

The appellant asserts a number of assignments of error both through counsel and personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). We disagree with all but one of the assignments of error.

## I. Multiplicity

At trial, the appellant moved that many of the charges and specifications be considered multiplicious for either findings or sentencing purposes. The military judge granted most of the motions. The appellant asserts, however, that the military judge erred when he did not determine, with respect to the 7 November incident, that the offense of assault consummated by a battery was multiplicious for findings purposes with disorderly conduct. He further contends that for the 12 November incident, the offenses of forcible sodomy and indecent acts are multiplicious for charging purposes. The military judge did determine that for each incident the offenses were multiplicious for sentencing purposes and we need not determine this issue. *But see United States v. Traeder*, 32 M.J. 455 (C.M.A.1991) (The Court of Military Appeals calling into question the "single impulse" theory of multiplicity for punishment purposes). We disagree that the assault consummated by a battery and the disorderly conduct are multiplicious, but do agree that the forcible sodomy and the indecent acts are multiplicious.

▮▮▮ A convening authority is free to decide the number of offenses to be charged when a soldier's conduct violates more than one provision of the Uniform Code of Military Justice. *United States v. Baker*, 14 M.J. 361 (C.M.A.1983). However, this discretionary function is not limitless, for there cannot be a multiplication of charges. A specification may be multiplicious with another specification if it alleges the same offense, or an offense is necessarily included in the other, or if they describe the same conduct in two different ways. Manual for Courts–Martial, United States, 1984, Rules for Court–Martial 907(b)(3)(B) discussion [hereinafter R.C.M.]. The framework to determine if there is a multiplication of charges was set forth in *Baker* by the United States Court of Military Appeals. First, it must be determined if the charged offenses are based on one transaction; that is, a series of occurrences or an aggregate of acts which are logically related to a single course of criminal con-

duct. If the charges are based on a single transaction, then it must be determined whether the offenses have a greater or lesser offense relationship; whether the charges are part of an indivisible crime; or, whether the offenses are different aspects of a continuous course of conduct prohibited by one statutory provision. If this is the situation, then the same criminal offense has been charged in a duplicative manner as a matter of law. *Baker*, 14 M.J. at 366. However, two or more distinct criminal acts may arise out of what is essentially one transaction or course of conduct. *United States v. Dearman*, 7 M.J. 713 (A.C.M.R.), *pet. denied*, 7 M.J. 376 (C.M.A.1979). For example, an "assault and disorderly conduct may be multiplicious if the disorderly conduct consists solely of the assault." R.C.M. 907(b)(3)(B) discussion.

■ In the instant case, the assault and the disorderly conduct occurred during one transaction. However, these offenses are not lesser included offenses of each other, they are not part of an indivisible crime, and they are not different aspects of a continuous course of conduct prohibited by one statutory provision. The disorderly conduct of the appellant did not consist solely of the assault on his wife. He was loud in the hallway before entering his wife's room. There was such a commotion in the room that it caused other occupants of the billeting facility to come out into the hallway. After leaving the room, the appellant was again so loud that it caused other occupants to come out of their rooms to see what was happening. We hold that the appellant's disorderly conduct did not solely consist of the assault on his wife. Accordingly, we hold that the military judge did not err in denying the motion to consider these offenses multiplicious for findings purposes.

■ In a separate incident, the appellant was found guilty of forcible sodomy by sitting on his wife while she was tied up and placing his penis in her mouth. He was also found guilty of committing an indecent act by tying his wife up and, at knife point, placing his penis in her vagina, forcing her to engage in nonconsensual sexual intercourse, placing his mouth on her vagina, and placing his penis in her mouth.

These offenses are based on one transaction. The offense of indecent acts is a lesser included offense of sodomy. The offenses are part of a divisible crime, but they are different aspects of a continuous course of conduct prohibited by one statutory provision. The appellant forced his wife to commit sodomy on him and he also committed a series of indecent acts on his wife. We hold that the indecent acts were part of the forcible sodomy and to charge them separately was multiplicious. We will set aside the findings of guilty of the indecent acts since it is a lesser included offense of the offense of forcible sodomy.

II. Legal and Factual Sufficiency

The appellant contends that the evidence is legally and factually insufficient to support the findings of guilty of the kidnapping of his wife. He contends that the holding of his wife was merely incidental to the other crimes for which he has been found guilty.

■ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). The test for legal sufficiency is whether, considering the evidence in a light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991).

■ More than incidental asportation or holding is required for kidnapping. *United States v. Jeffress*, 28 M.J. 409 (C.M.A.1989). In determining whether the holding or asportation was incidental, we consider the following factors as set forth in *United States v. Santistevan*, 22 M.J.

538, 543 (N.M.C.M.R.1986), *aff'd*, 25 M.J. 123 (C.M.A.1987):

a. There must be both an unlawful seizure, kidnapping, or carrying away, and a holding for a period of time.

b. Is the holding duration *de minimis* or appreciable.

c. Whether the carrying away occurred during the commission of a separate offense.

d. Whether the detention or carrying away is inherent in commission of the other offenses.

e. Does the asportation/detention exceed that needed for the other offenses; such as, is there a distinct intention to move/detain the victim beyond that needed to commit the offenses.

f. Are the risks to the victim beyond that inherent in the commission of the other offenses.

■ In applying these factors to the facts of this case, we find that Mrs. Broussard was seized when she was grabbed from behind and the scarf thrown over her head, and there was a holding when she was dragged into the bedroom. This was not a *de minimis* holding since she was bound by her arms and legs to furniture and held for more than a limited period of time. The holding was done during the commission of various sex crimes, but the carrying away and holding were not inherent in any of the sex crimes committed. The asportation/detention was not needed for the crimes and there was a separate intent to hold because the appellant had rearranged the furniture in the bedroom and prepared some rope so that he could tie his wife to the dressers and radiator. The moving of the victim from the living room to the bedroom, the use of a knife, and tying the victim to furniture placed the victim in more significant danger than needed to commit the other offenses. Accordingly, we find that there was a carrying off and a holding sufficient for the offense of kidnapping. Applying the tests of *Turner* and *Jackson,* we hold that the evidence is legally and factually sufficient to sustain the findings of guilty of kidnapping.

### III. Impact on the Community Testimony

The appellant asserts that the military judge erred when he permitted the first sergeant, to whom the victim ran after the 18 December attempted kidnapping, to testify as to the impact the offense had on his children and the children in the neighborhood.

■ The government may present evidence in the sentencing portion of the trial of any aggravating circumstances directly resulting from the offenses of which an accused has been found guilty. R.C.M. 1001(b)(4). This Court has determined that this rule was intended to greatly expand the types of information that could be presented during the presentencing proceedings. *United States v. Harrod,* 20 M.J. 777, 779–80 (A.C.M.R.1985). The government has been permitted to present the testimony of the parents of a murder victim, *United States v. Whitehead,* 30 M.J. 1066 (A.C.M.R.1990); the testimony of a unit commander on the impact on crew integrity, *United States v. Fitzhugh,* 14 M.J. 595 (A.F.C.M.R.1982); and the testimony on the crimes impact on the community, *see also United States v. Pearson,* 17 M.J. 149 (C.M.A.1984).

■ The proper test to determine if the military judge erred is abuse of discretion. *United States v. Witt,* 21 M.J. 637, 643–644 (A.C.M.R.1985), *pet. denied,* 22 M.J. 347 (C.M.A.1986). We hold that the military judge did not abuse his discretion in permitting the first sergeant to testify. The direct impact that an accused's crime has on the children of a neighborhood is admissible in the presentencing portion of a trial.

### IV. *Grostefon* Errors

The appellant also personally asserts a number of errors pursuant to *United States v. Grostefon,* 12 M.J. at 431. We have carefully considered these errors and find them without merit. However, we will comment on some of these assertions.

■ The appellant contends that the staff judge advocate erred in the pretrial advice and the post-trial recommendation to

the convening authority when his race was included in these documents. Reference to race is inappropriate for inclusion in court-martial records. *See United States v. Brice,* 33 M.J. 176 (C.M.A.1991) (summary disposition); *United States v. Brannon,* 33 M.J. 179 (C.M.A.1991) (interlocutory order). Both the pretrial advice and the post-trial review were completed before the opinion in both *Brice* and *Brannon.* We find, however, that the inclusion of the appellant's race in the documents was error, but harmless.

The appellant also contends that the staff judge advocate's comments on the legal errors he asserted in his response to the post-trial advice of the staff judge advocate were inadequate. R.C.M. 1105. The staff judge advocate is only required to state his agreement or disagreement with legal errors raised by the appellant. He is not required to provide his analysis or rationale. R.C.M. 1106(d)(4). The staff judge advocate in an addendum to his post-trial recommendation stated, "I have carefully considered the enclosed matters and, in my opinion, corrective action with respect to the findings and sentence is not warranted." The staff judge advocate in essence stated that he disagreed with the assertions of the appellant under R.C.M. 1105. We hold that this statement by the staff judge advocate is sufficient under R.C.M. 1106.

The findings of guilty of Additional Charge II and its Specification are set aside and Additional Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence based in the error noted, the entire record of trial, and *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the sentence is affirmed.

Judge WERNER and Judge WALCZAK concur.