UNITED STATES, Appellee,

v.

Specialist Lisa A. SWANHOLM, 502–98–4134, United States Army, Appellant.

ACMR 9102334.

U.S. Army Court of Military Review.

28 Dec. 1992.

For Appellant: Captain Thomas D. Wight, JAGC, (argued); Captain Jeffrey Flemming, JAGC USAR (on brief). Captain Robin L. Hall, JAGC.

For Appellee: Captain Jane F. Polcen, JAGC, (argued); Colonel Dayton M. Cramer, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before JOHNSON, WERNER, and GRAVELLE, Appellate Military Judges.

OPINION OF THE COURT

WERNER, Judge:

In accordance with her pleas, the appellant was found guilty of desertion with intent to shirk important service and missing movement in violation of Articles 85 and 87, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 887 (1982). A general

court-martial composed of members sentenced her to a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to Private E1. In accordance with the terms of a pretrial agreement, the convening authority disapproved six months of the confinement but approved the remainder of the sentence as adjudged.

The appellant, a medic, was a member of the 5501st Army Hospital, a unit of the United States Army Reserve based at Fort Snelling, Minnesota. On 25 January 1991, pursuant to the authority of 10 U.S.C. § 673, the 5501st was mobilized and ordered to active duty with the Health Services Command for a period of twelve months. In accordance with the mobilization plan, the 5501st was ordered to report to Brooke Army Medical Center, Fort Sam Houston, Texas, effective 1 February 1991, where it would replace active duty soldiers who were stationed at Fort Sam Houston but were being deployed to Saudi Arabia in support of the combat forces of Operation Desert Storm. It was anticipated that the 5501st would be treating casualties from Operation Desert Storm and that the appellant's duties would include assisting in that treatment.

The appellant was ordered to active duty by name in an annex to the mobilization order. On 29 January, First Lieutenant (1LT) Carlson telephonically ordered the appellant to report to her unit at Fort Snelling on 5 February. Simultaneously, 1LT Carlson informed her of administrative information essential to facilitate her transition to active duty. The appellant acknowledged understanding the order but nevertheless informed the lieutenant that she would not report, stating that she intended to apply for an administrative discharge as a conscientious objector. The appellant failed to report to Fort Snelling as ordered and the unit moved to Fort Sam Houston during the latter part of February 1991.

On 1 April, the appellant called a recruiting sergeant in St. Paul, Minnesota and informed him that she wished to return to military control. The sergeant referred the matter to the appellant's unit which had moved to Fort Sam Houston. In telephone discussions with officials in her unit, the appellant informed them of her desire to terminate her absence. However, she said she would return on the condition that she be permitted to remain in Minnesota where she would submit an application for conscientious objector status. On 7 May, the appellant was asked by military police authorities in Minnesota to turn herself in at Fort Snelling so she could be transported to Fort Sam Houston. The appellant returned to military control on 8 May.

## I.

The appellant contends that her pleas of guilty to desertion with intent to avoid important service are improvident on grounds of factual insufficiency as the duty appellant allegedly avoided was not "important service." *See United States v. Chambers,* 12 M.J. 443 (C.M.A.1982). We disagree. The specification alleges that the appellant intended to shirk important service, "namely: service as a medic at Fort Sam Houston in support of Operation Desert Storm." The Manual for Courts–Martial, United States, 1984, Part IV, para. 9c(2)(a) defines important service as follow:

"Hazardous duty" or "important service" may include service such as duty in a combat or other dangerous area; embarkation for certain foreign or sea duty; movement to a port of embarkation for that purpose; entrainment for duty on the border or coast in time of war or threatened invasion or other disturbances; strike or riot duty; or employment in aid of the civil power, in, for example, protecting property, or quelling or preventing disorder in times of great public disaster. Such services as drill, target practice maneuvers, and practice marches are not ordinarily "hazardous duty or important service." *Whether a duty is hazardous or a service is important depends upon the circumstances of the particular case, and is a question of fact for the court-martial to decide.* (emphasis added)

Initially, we observe that as the appellant pleaded guilty, the government is

not required to prove that appellant's prospective medical duties at Fort Sam Houston were, in fact, important service but only that those duties could *reasonably* constitute "important service." *See United States v. Norvell,* 26 M.J. 477, 480 (C.M.A.1988); *United States v. Hocker,* 32 M.J. 594 (A.C.M.R.1991).

■ There can be little doubt of the importance of the appellant's service under the circumstances herein. Deployment of any unit or individual during wartime carries with it the inference that the mission of that unit or individual is important in the war effort. This is especially true when a reserve unit or reservist is ordered or called to active duty during war or national emergency.[1] By law, mobilization is initiated at the highest levels of government when the President determines that world or national events warrant such action and orders that it be carried into effect. The statute authorizing the President to mobilize the Reserves provides in relevant part:

> In time of national emergency declared by the President after January 1, 1953, or when otherwise authorized by law, an authority designated by the Secretary concerned may, without the consent of the persons concerned, order any unit, and any member not assigned to a unit organized to serve as a unit, in the Ready Reserve under the jurisdiction of that Secretary to active duty (other than for training) for not more than 24 consecutive months.

10 U.S.C. § 673(a). Furthermore, Executive Order No. 12743, dated January 18, 1991, implemented the statute for the purpose of responding to "the continuing threat posed by Iraq's invasion of Kuwait." *See also,* Executive Order No. 12722, dated August 2, 1990 (declaring a national emergency to address the threat to the national security and foreign policy of the United States posed by the invasion of Kuwait by Iraq.).

The fact that the appellant's unit was mobilized and ordered to redeploy in order to meet a threat from a foreign enemy is, by itself, sufficient to support the military judge's finding that appellant's service was important. Nevertheless, assuming *arguendo,* that additional justification is required, the unique facts of this case furnish it. The medical mission of the appellant's unit and appellant's duties as a medic are essential facets of combat support. Appellant argues that since the appellant's unit was not assigned overseas, the unit's combat support role and her service were insignificant to the war effort. However, this argument ignores the fact that the appellant's unit replaced a stateside unit which was then deployed overseas in direct support of combat troops. We find this to be strong evidence that appellant's unit was performing important service. Furthermore, appellant's unit was ordered to treat casualties evacuated from the war zone to the United States. This mission had a potentially significant impact on maintaining troop morale and in facilitating the return of injured soldiers to duty. We are therefore convinced that the appellant's service would have sufficiently contributed to the war effort and was properly found to be "important service."

---

1. Over thirty years ago, Judge Latimer commented, in a different context, on the significance of reservists as members of the armed forces:

> No doubt the accused is one step removed from the man on active duty, but he has not become a full-fledged civilian and his military status is such that he is in fact part and parcel of the armed services. He was trained by the Air Force to be an airman, and Congress has said he must be available for immediate recall to active duty during his obligated duty period. He is part of that body of men who is characterized as ready reserves, and he is subject to serve on active duty almost at the scratch of the Presidential pen, 10 USC § 673.

> It must be realized that under existing conditions a reservoir of trained individuals who are minute-men must be maintained to augment those on full-time employment.

> . . . .

> Without that force [the reserves], the military potential of this country would be woefully inadequate to defend against those who might seek to conquer or destroy. To take an opposite view would be to overlook entirely the ever-present threats to present-day existence and the commands of Congress as shown by its enactments.

*United States v. Wheeler,* 10 U.S.C.M.A. 646, 28 C.M.R. 212, 221 (1959).

## II.

The appellant also asserts:

THE STAFF JUDGE ADVOCATE ERRED IN SERVING HIS ADDENDUM ON APPELLANT'S TRIAL DEFENSE COUNSEL WHEN APPELLANT COMPLAINED ABOUT THE EFFECTIVENESS OF HER TRIAL DEFENSE COUNSEL'S REPRESENTATION IN AN UNDATED LETTER TO THE CONVENING AUTHORITY.

Again, we disagree.

The appellant's letter, which was undated, was submitted to the convening authority along with two other documents and her counsel's clemency request pursuant to Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1105. The appellant wrote, "I believe that I am deserving of clemency.... I feel that I was not properly shown as a person at my court-martial. My defense lawyer concentrated on psychological matters which was both not what I wanted done nor do I feel relevant to the issues at hand. I am a very good person and an honest person." None of the documents raised any legal objection to the trial proceedings. The trial defense counsel filed an affidavit explaining why he elected to present psychological evidence in mitigation and extenuation and that the appellant agreed with his strategy. We find his affidavit credible.

 An accused is entitled to representation by competent legal counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987). This right extends to counsel's appearance on behalf of the accused in post-trial proceedings. *United States v. Holt*, 33 M.J. 400 (C.M.A.1991); *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977). "[W]here an accused challenges the adequacy of his counsel's trial representation and certainly where the accused expresses a 'desire to sever' his relationship with that counsel, the conflict between the accused and counsel is so great that appointment of substitute counsel is required." *United States v. Leaver*, 36 M.J. 133, 135 (C.M.A. 1992). Where an accused responds to a post-trial recommendation with a letter to the convening authority questioning the professionalism and fitness of his trial defense counsel, it is error to serve that counsel with the addendum since "[a]ny action taken by the counsel to advance appellant's claim of ineffective representation would have been taken at the expense of the counsel's own reputation for competence." *United States v. Stith*, 5 M.J. 879, 880 (A.C.M.R.1978), *pet. denied*, 7 M.J. 270 (C.M.A.1979).

In the instant case, the appellant's letter does not attack her counsel's competence, professionalism, or fitness as an attorney. However, it does reflect her dissatisfaction and disagreement with the tactics employed by her counsel during the pre-sentencing portion of the trial. Tactical decisions by counsel, even if detrimental to the accused, do not equate to ineffectiveness of counsel. *United States v. Rivas*, 3 M.J. 282 (C.M.A.1977).

We have considered appellant's other assigned errors and find them without merit.

The findings of guilty and the sentence are affirmed.