**UNITED STATES, Appellee,**

v.

**Sergeant John K. PRUNER, 223–27–8610, United States Army, Appellant.**

**ACMR 9102442.**

U.S. Army Court of Military Review.

20 May 1993.

For Appellant: W. Christopher Hodge, Esquire (argued and on brief); Captain Clayton R. Diedrichs, JAGC.

For Appellee: Captain Jane F. Polcen, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Joseph C. Swetnam, JAGC (on brief).

Before WERNER, GRAVELLE, and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

Contrary to his pleas, on 30 October 1991, the appellant was convicted by a general court-martial composed of a military judge sitting alone of desertion with intent to avoid hazardous duty or shirk important service (Operation Desert Shield), in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885 (1982). His sentence to a dishonorable discharge, confinement for four months, forfeiture of all pay and allowances, and reduction to Private E1 was approved by the convening authority on 3 February 1992.[1]

### I.

The appellant was an intelligence analyst assigned to the Intelligence Section (G–2) of the 1st Infantry Division at Fort Riley, Kansas. In August 1990, Iraq invaded Kuwait, thereby triggering the United States' involvement in Southwest Asia in the military actions known as Operation Desert Shield and Operation Desert Storm. When he learned that the 1st Infantry Division would be among the units deployed to Saudi Arabia, the appellant, in October 1990, submitted an application for conscientious objector status. The following month, in compliance with applicable personnel regulations, his application was returned to him without action but with leave to resubmit after his unit had deployed overseas. See Army Reg. 600–43, Personnel—General: Conscientious Objection, para. 2–10 (1 Aug. 1983) [hereinafter AR 600–43], as changed by Message, HQ, Dep't of Army, DAPE–MPA/DAMO–OD–ADC, 191400Z Oct 90, subject: Desert Shield Personnel Message Number 31—Personnel Applying for Conscientious Objector Status; United States v. Morse, 34 M.J. 677 (A.C.M.R.1992).

On 30 November, the appellant subsequently instituted civil proceedings in federal district court wherein he moved for a temporary restraining order and preliminary injunction to restrain the Army from

---

1. In 1991, this court denied a petition for extraordinary relief filed by the appellant on a matter collateral to this appeal. Pruner v. United States, ACMR MISC 9100845 (29 Apr. 1991) (unpub. order). His subsequent appeal to the Court of Military Appeals was also denied. United States v. Pruner, 33 M.J. 272 (C.M.A. 1991).

reassigning him to Southwest Asia pursuant to AR 600–43 as changed; and to require the Army to accept his application for conscientious objector status. After a hearing on 7 December, the court denied his motions. The court's order memorializing its decision was published on 4 January 1991. *Pruner v. Department of the Army*, 755 F.Supp. 362 (D.Kan.1991).

Prior to the court's decision, the appellant was informed by military authorities that he would be allowed to submit his application at Fort Riley, but that he would be required to deploy with his unit pending action on his application.[2] On 10 December, the appellant resubmitted his application for conscientious objector status. While action on his application was pending, the 1st Infantry Division was ordered to deploy to Saudi Arabia between 20 December 1990 and 10 January 1991. The appellant, along with the other members of his unit, was granted leave from 15–20 December. On 20 December, the appellant failed to return from leave and remained absent until he surrendered to military authorities on 22 January 1991. By this time, his unit had deployed to Saudi Arabia. Unbeknownst to the appellant, because of his conscientious objector application, he had been reassigned to a unit at Fort Riley that did not deploy overseas.

## II.

The appellant first contends that the military judge erred in denying his motion to enforce the provisions of a pretrial agreement between him and the convening authority. He claims that he had substantially performed his obligations under the agreement, but that the convening authority improperly withdrew therefrom and refused to perform his part of the bargain. The appellant requests that we remedy the error by reducing his sentence to conform to the terms of the agreement. The government admits that the convening authority withdrew from the agreement, but asserts that his action was not improper as the appellant had not complied with the conditions imposed upon him by the agreement before withdrawal occurred. We hold that the military judge was correct in denying the appellant's motion.

On 25 January 1991, the appellant was charged with desertion with intent to shirk important or hazardous service (Article 85), unauthorized absence with intent to avoid maneuvers or field exercises (Article 86), and missing movement (Article 87), offenses arising out of the appellant's failure to return from leave on 20 December 1990.[3] During the first week of February 1991, the appellant, through counsel, submitted a written offer to plead guilty only to the latter two charges in consideration for an approved sentence that would have mitigated any adjudged dishonorable discharge to a bad-conduct discharge and suspended any confinement in excess of six months for a period of six months. He also informed the Article 32, UCMJ, investigating officer that he wished to waive the pretrial investigation. On 12 February, the convening authority accepted the appellant's written offer to plead guilty on the conditions set forth in the agreement.

In a memorandum dated 4 March 1991, the staff judge advocate recommended to the convening authority that he withdraw from the pretrial agreement and proceed to trial on all charges. Among the reasons offered in support of the recommendation was the fact that processing delays and the rapid end to the hostilities in Southwest Asia enabled key government witnesses to become available to testify on the desertion charge.[4] Hence, the pretrial agreement

---

2. Subsequently, AR 600–43 was changed to require retention in the command of servicemembers who had applied for conscientious objector status.

3. The offenses were ultimately determined to be multiplicious with each other for findings and the latter two were properly dismissed by the military judge on that basis.

4. The staff judge advocate wrote, "Given the stunning success of Operation Desert Storm, the witnesses who provided the statements we received on 26 February 1991 should be available for trial much sooner than we previously believed witnesses who had deployed to Saudi Arabia could possibly be available. The witnesses who provided the statements should readily be available well in advance of the Government's deadline for trying the case."

was no longer advantageous to the government. The staff judge advocate also noted that Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 705(d)(5)(B) [hereinafter R.C.M.] permitted withdrawal from a pretrial agreement prior to the accused's commencement of performance of any of his obligations under the agreement. He reasoned that since the appellant had not entered guilty pleas or entered into a binding stipulation of fact as required by the agreement, the proscriptive language of the rule had not been violated. In accordance with the staff judge advocate's recommendation, the convening authority withdrew from the agreement the same day.

The record and allied papers substantiate the factual assertions contained in the staff judge advocate's memorandum. In addition to the appellant's entry of a provident plea of guilty, the agreement was expressly conditioned on the appellant entering into a stipulation of fact describing the circumstances surrounding his commission of the offenses. The agreement further provided for automatic cancellation in the event the appellant refused to enter into the stipulation. The appellant was also required to stipulate to the testimony of witnesses located outside the Fort Riley area. As of 4 March, the stipulation of fact had been drafted several times but had neither been agreed to by all parties nor been signed by the government's representative. Moreover, the stipulations to the testimony of distant witnesses appeared to be unnecessary since it was anticipated that they would have returned to Fort Riley and would be available to testify at the appellant's trial.

The record also demonstrates that the agreement did not require the appellant to waive the Article 32 investigation. The appellant's counsel testified that he had been informally assured by the staff judge advocate that the agreement would also be conditioned on the appellant's waiver of the Article 32 investigation. However, the staff judge advocate disputed this asser-tion, although he did indicate that waiver of the investigation might be an additional inducement to the convening authority to enter into the pretrial agreement on the terms proposed by the appellant.

The military judge found that waiver of the Article 32 investigation was not a condition of the agreement and that the parties had not agreed to a stipulation of fact even though one had been proposed by the appellant. He ruled that the government could permissibly withdraw from the agreement. He also determined that the defense had waived the Article 32 investigation as a result of a misunderstanding and should not be bound by its waiver.[5]

Rule for Courts–Martial 705(d)(5)(B) provides:

> The convening authority may withdraw from a pretrial agreement at any time before the accused begins performance of promises contained in the agreement, upon the failure by the accused to fulfill any material promise or condition in the agreement, or if findings are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

What constitutes commencement of performance of a pretrial agreement under R.C.M. 705(d)(5)(B) has been the subject of two decisions from the Court of Military Appeals. In *United States v. Manley*, 25 M.J. 346 (C.M.A.1987), an accused attempted to plead guilty in accordance with the terms of a pretrial agreement but his pleas to one of several drug charges were determined to be improvident and were properly rejected by the military judge. The court held that the convening authority could have permissibly withdrawn from the pretrial agreement even though the accused had commenced performance of a condition of the agreement by entering a guilty plea. Withdrawal would have been proper since the military judge had correctly determined that the accused's pleas were improvident and had entered not guilty pleas on his behalf. Moreover, withdrawal was expressly permitted by the terms of the pre-

---

**5.** An investigation pursuant to Article 32 was thereafter conducted and the charges were re-

referred to a general court-martial on 18 July 1991.

trial agreement.[6] 25 M.J. at 350. Ultimately, withdrawal was held improper on the facts of the case after the parties had orally agreed to a modification of the agreement at trial and the accused had met all the conditions of the modified agreement. 25 M.J. at 351.

In *United States v. Penister*, 25 M.J. 148 (C.M.A.1987), the court held that a convening authority could not permissibly withdraw from a pretrial agreement where the military judge unjustifiably refused to accept the accused's pleas of guilty and where the trial counsel moved that the pleas be rejected. The trial judge rejected the appellant's pleas of guilty on grounds that certain matters presented during the providence inquiry were inconsistent with his pleas. However, the Court determined that the judge's ruling was clearly erroneous. "Since the judge's erroneous rejection of the guilty plea was not a 'failure by the accused,' and since the accused had fully performed his promise, the convening authority's withdrawal from the agreement contravened the Rule." 25 M.J. at 153.

The record here supports the propriety of the convening authority's withdrawal from the agreement. The appellant's waiver of the Article 32 investigation was apparently his own idea and was not part of either the written agreement or any informal agreement between him and the government. In any event, appellant was afforded an Article 32 investigation after the military judge ruled he had waived his right to it. Moreover, the fact that the appellant signed a proposed stipulation of fact and had not requested the presence of witnesses as promised are not equivalent to commencement of performance of the agreement. Rather, they only constitute preparations for submission of the plea of guilty. As such, they are not independent requirements of the agreement but are tied to the more fundamental conditions that the appellant enter a plea of guilty and that it be accepted as provident by the military judge. Without the guilty plea, the appellant is not bound by his promises to stipulate to essential facts or to waive the presence of distant witnesses. Had the appellant demonstrated that he commenced performance of the agreement by actually entering pleas of guilty under the conditions stated in the agreement, his argument might have some vitality. Since he did not plead guilty nor was any such plea improperly rejected, he is not entitled to an order enforcing the provisions of the agreement.

### III.

■ The appellant has also challenged the legal sufficiency of the finding of guilty of the desertion charge on grounds that the duty he allegedly intended to shirk was neither "hazardous duty" nor "important service." The government argues that, by entering a confessional stipulation of fact, the appellant has effectively pleaded guilty and waived his right to contest legal sufficiency. In this regard, the government is wrong.

An accused does not, by pleading guilty, give up the right to question on appeal the legal sufficiency of charges of which he stands convicted. *United States v. Norvell*, 26 M.J. 477 (C.M.A.1988). The principle is equally applicable where the accused enters into a confessional stipulation of fact, as it is the functional equivalent of a plea of guilty. *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977). Nevertheless, we reject the appellant's assertion that his conviction of the charge of desertion is legally insufficient.

■ The real issue raised by the appellant concerns the factual sufficiency of the charges. That is, whether the duty or service involved here—deployment to Saudi Arabia to participate in Operation Desert Shield—was, in fact, hazardous or important. This court answered that question affirmatively in a similar context in *United States v. Swanholm*, 36 M.J. 743 (A.C.M.R. 1992). In *Swanholm*, we affirmed the conviction of a reservist who had pleaded guilty to desertion with intent to shirk im-

---

**6.** One of the provisions of the agreement allowed automatic cancellation based on the "refusal of the court to accept [the accused's] plea of guilty." A similar provision appears in the pretrial agreement in this case.

portant service as a medic. After Swanholm's medical service unit was ordered to active duty in the United States to replace active duty units deploying to Southwest Asia as part of Operation Desert Storm, she failed to report to her unit as required. Swanholm argued factual insufficiency in that her duties as a medic were not "important service." We first held that, since she had pleaded guilty, the government was only required to prove that her duties as a medic "could *reasonably* constitute 'important service.'" Then we found that her duties as a medic were, under the circumstances reflected in the record, important for the war effort. 36 M.J. at 745.

The instant case parallels *Swanholm.* As a result of the appellant's confessional stipulation the government's burden of proof diminishes from proving guilt beyond a reasonable doubt to establishing that the factual predicate for the stipulation reasonably establishes the appellant's guilt. 36 M.J. at 745. We also find that

under the circumstances, the duties the appellant shirked, *i.e.,* military intelligence with a unit about to be deployed to a combat area, constituted important service. *United States v. Willingham,* 2 U.S.C.M.A. 590, 10 C.M.R. 88 (1953); *see also United States v. Smith,* 18 U.S.C.M.A. 46, 39 C.M.R. 46 (1968).

We have considered the remaining assignments of error and find that they are without merit.

The findings of guilty and the sentence are affirmed.

Judge GRAVELLE and Judge DELL'ORTO concur.