**UNITED STATES, Appellee,**

v.

**Specialist Miguel ALOMARESTRADA, 583–78–1811, United States Army, Appellant.**

**ACMR 9200330.**

U.S. Army Court of Military Review.

12 May 1994.

---

For Appellant: Cornelius Perry, Captain Victor A. Tall, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC, Captain Jane F. Polcen, JAGC (on brief); Major Kenneth T. Grant, JAGC.

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

Pursuant to his pleas, the appellant was convicted, by a military judge sitting as a general court-martial, of four specifications of wrongful distribution of cocaine and one specification of wrongful possession of cocaine with intent to distribute in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1988) [hereinafter UCMJ]. The military judge sentenced the appellant to a dishonorable discharge, confinement for twenty-two years, forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved the sentence but suspended all confinement in excess of 240 months for 12 months from the date the sentence was adjudged with provision for automatic remission.

## I.

In early August of 1991, Detective (Det.) Tom Padukiewicz, a member of the Tacoma, Washington, Narcotics Enforcement Team (TNET), learned through information gained from a confidential informant that the appellant was dealing cocaine. Detective Padukiewicz contacted members of the Federal Bureau of Investigation (FBI) whereupon a joint investigation of the appellant's activities commenced. Detective Padukiewicz, with the assistance of the confidential informant, made four controlled purchases of cocaine from the appellant: 28.5 grams of cocaine for $900.00; 56.3 grams for $1800.00; 28.4 grams of cocaine for $900.00; and 118.2 grams of cocaine for $3600.00. A fifth, and ultimately final transaction, was negotiated with the appellant wherein Det. Padukiewicz agreed to purchase 1½ kilograms of cocaine for $50,-000.00. However, before the appellant completed this sale, federal and state authorities arrested him.[1]

Of the numerous assignments of error presented to this court, only the following merit discussion.[2]

## II. Ineffective Assistance of Counsel

The appellant maintains that he was denied the effective assistance of counsel at all stages of his court-martial. He argues that his counsel's representation was defective because: (1) his detailed trial defense counsel was suffering from a neurological disorder at the time he undertook representation of the appellant; (2) his civilian trial defense counsel failed to have the appellant's Spanish-speaking attorney present when the terms of the pretrial agreement were discussed; (3) his civilian defense counsel did not object to the absence of a translator at the Article 32 investigation as well as at the court-martial; and (4) his second detailed trial defense counsel failed to secure favorable clemency letters for post-trial submission to the convening authority. We disagree.

 "Because claims of inadequate representation are ofttimes made by disaffected clients seeking to assign the blame for their predicament to their lawyers rather than themselves, the law presumes that counsel is effective, and places upon an appellant the burden of establishing ineffectiveness." *United States v. Mansfield,* 24 M.J. 611, 616

1. Following the appellant's arrest, a federal search warrant was issued for his apartment. Among the items seized were the following: 2.2 pounds of cocaine (discreetly hidden in the lining of the appellant's refrigerator); $37,551.00 in cash; baby powder and superior powder inositol (substances commonly used to dilute pure cocaine to increase the dealer's profits); and a 9–millimeter pistol.

2. Assignment of Error VIII, alleging that the appellant's civilian trial defense counsel was ineffective for failing to raise the issue of illegal pretrial punishment, was withdrawn following the government's answer indicating that the issue had, in fact, been raised and resolved in the appellant's favor. Assignment of Error X has been resolved against the appellant. *Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

(A.F.C.M.R.1987)(citing *Commonwealth v. Molina*, 358 Pa.Super. 28, 516 A.2d 752 (1986)). In order to meet this burden, the "appellant must present sufficient evidence that, when considered in the light of the entire appellate record, establishes a valid claim that (1) counsel's conduct was not objectively reasonable under prevailing professional norms; and, (2) there is a reasonable probability that, but for counsel's unprofessional error, the findings or sentence would have been different." *United States v. Crum*, 38 M.J. 663, 665 (A.C.M.R.1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). More than a prima facie showing of ineffectiveness is necessary to meet the burden of overcoming effectiveness. *Crum*, 38 M.J. at 666 n. 3. Applying this standard to the facts of this case, we conclude that the appellant has not carried his burden.

A. Captain Thompson's Ineffectiveness

Captain (CPT) Thompson, a trial defense attorney assigned to Fort Lewis, Washington, was detailed to represent the appellant on 10 September 1991. Captain Thompson believed that the evidence of guilt against the appellant was overwhelming. Therefore he negotiated a pretrial agreement limiting the appellant's confinement to thirteen and one-half years.[3] However, the appellant ignored CPT Thompson's advice that a guilty plea was in his best interest and the charges proceeded to an Article 32(b), UCMJ, investigation. Approximately one hour and fifteen minutes into the hearing, Mr. Lucas, a civilian attorney, entered and announced that he had been retained by the appellant's family and would be representing the appellant. Captain Thompson participated in the appellant's defense until early January 1992.[4]

At the time CPT Thompson undertook representation of the appellant, he may have been suffering post-operative effects of surgery conducted some two years earlier to remove a brain tumor. Varying neurological reports "suggest" that CPT Thompson was experiencing fatigue, organizational problems, and memory lapses that may have affected his abilities to represent clients during the latter part of 1991. However, our review of these reports do not convince us that CPT Thompson suffered from a "disability" that affected his performance as an attorney in this case.

Another panel of this court previously evaluated CPT Thompson's competence relative to another client who, like the appellant, sought to equate CPT Thompson's disability with automatic ineffective assistance of counsel. *United States v. Anthony*, 37 M.J. 963 (A.C.M.R.1993). In that case, the court refused to apply a per se disqualification of CPT Thompson based upon his illness.[5] Rather, as we do here, the court evaluated CPT Thompson's actions under the standards of attorney competence of *Strickland* and *Scott*. We are satisfied CPT Thompson's defense of the appellant met those standards. CPT Thompson presented a clear and cogent argument to the special court-martial convening authority requesting the presence of an interpreter to assist in the defense of the appellant. Further, he successfully negotiated a pretrial agreement, the terms of which were significantly more favorable than those which the appellant and his civilian defense counsel ultimately accepted (thirteen and one-half years' versus twenty years' confinement). We therefore reject the appellant's claim and find that CPT Thompson provided the appellant with effective assistance of counsel.

---

3. As part of the proposed agreement, the appellant offered to waive the Article 32, UCMJ hearing.

4. In an additional assignment of error, the appellant argues that, as his counsel was ill or unavailable during the latter part of November and virtually all of December, he was improperly denied his right to detailed military counsel. We disagree. Throughout this time, the appellant was ably represented by Mr. Lucas. Further,

any perceived prejudice was cured by the military judge when he approved several delays to ensure adequate preparation.

5. Merely alleging a disability is not sufficient. As Senior Judge Gravelle points out, proof of incapacitation *may* constitute ineffective assistance of counsel. However, there must be substantial evidence raised as to incompetence to garner a hearing on the subject. *Anthony*, 37 M.J. at 965.

## B. The Language Barrier

The appellant claims he was prejudiced by his civilian defense counsel's failure to obtain a Spanish-speaking attorney during pretrial discussions concerning the pretrial agreement. He also claims prejudice as a result of his counsel's failure to object to the absence of a Spanish-speaking interpreter at the Article 32(b), UCMJ, investigation and at the court-martial. These assertions fail for several reasons.

On 1 October 1991, CPT Thompson filed a request with the staff judge advocate for an interpreter to assist the appellant in preparing his defense. The special court-martial convening authority (SPCMA) denied the request, basing his decision upon statements from members of the appellant's company (including his company commander) that the appellant had no difficulty communicating in English. The SPCMA also relied on Army Regulation 600–20, which requires that all soldiers in the United States Army maintain sufficient proficiency in the English language to perform their duties. *See* Army Reg. 600–20, Personnel: Army Command Policy, para. 4–13 (30 Mar. 1988). Subsequently, CPT Thompson and Mr. Lucas requested appointment of an Individual Military Counsel (IMC) who was fluent in Spanish. This request was granted and a CPT Ryan became the appellant's IMC.

This court has admitted the affidavits of both CPT Thompson and Mr. Lucas as they relate to these issues and we find them credible and convincing. Both CPT Thompson and Mr. Lucas state unequivocally that the presence of a Spanish-speaking interpreter was unnecessary. Indeed, CPT Thompson noted that the request for an interpreter was merely tactical and not predicated upon a real need for translation. The appellant's responses throughout the providence inquiry as well as the presentencing phase bear this out. Most notably, however, at the time. of his court-martial, the appellant had the services of a Spanish-speaking attorney who could clarify any misunderstanding experienced by the appellant.

## C. Post-trial Concerns

### 1.

Following his conviction, the appellant claimed he had been "railroaded" and "tricked" into signing a pretrial agreement. Captain Ryan interpreted the appellant's attack as all-inclusive of the defense team. As a result, Captain Ryan believed that a conflict of interest existed and that continued representation of the appellant at the post-trial phase was not possible. She discussed this with the appellant who shrugged her off, claiming to have hired a civilian attorney for his representation. CPT Ryan believed that her client had constructively released her and contacted her Regional Defense Counsel (RDC) who subsequently appointed substitute counsel, CPT Raddatz.[6] The appellant maintains that his attorney-client relationship with CPT Ryan was improperly severed. We disagree.

The Court of Military Appeals has held that "[o]nce entered into, the relationship between the accused and his appointed military counsel may not be severed or materially altered for administrative convenience." *United States v. Murray*, 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970). However, "good cause" is permissible grounds for termination of an attorney-client relationship. What constitutes "good cause" depends on the circumstances of the case. "[W]here an accused challenges the adequacy of his counsel's trial representation ... the conflict between the accused and counsel is so great that appointment of substitute counsel is required." *United States v. Leaver*, 36 M.J. 133, 135 (C.M.A.1992) (citing cases). In the instant case, the appellant challenged the adequacy of his defense team. Captain Ryan, believing that she would be operating under a conflict of interest, informed the

---

6. The appellant has alleged that CPT Raddatz's post-trial representation of him was ineffective as well. However, the appellant has not met his burden of coming forward with information that had not already been presented to the convening authority in the form of trial testimony. Further, the appellant has not offered any additional statements that he desired to present to the convening authority prior to the latter's taking action on the case. *See United States v. DeGrocco*, 23 M.J. 146, 148 (C.M.A.1987) (appellant "must make some showing" of what he would have presented to the convening authority).

appellant of her quandary and immediately arranged for the appointment of substitute counsel, CPT Raddatz. *See* Army Reg. 27–26, *Legal Services: Rules of Professional Conduct for Lawyers*, Rule 1.16(b)(6) (1 May 1992). We find that this conflict provided good cause for CPT Ryan to withdraw as attorney of record for the appellant. *See United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978) (Cook, J., concurring) (" 'good cause' means that the circumstances make termination of an existing attorney-client relationship reasonable and the termination presents no reasonably foreseeable harm to the accused"). Accordingly, the withdrawal of CPT Ryan and substitution of CPT Raddatz was proper.

### 2.

■ The appellant also challenges the propriety of the staff judge advocate's service of the post-trial recommendation on CPT Raddatz. He asserts that, as he had voiced dissatisfaction with CPT Raddatz's post-trial representation, a second substitute counsel should have been appointed. We disagree.

In general,

> [t]he primary reason for not allowing the trial defense counsel to act on behalf of his client when his trial performance has been attacked is because the defense counsel's interest in defending his reputation for competence conflicts with his interest in representing his client on appeal. *United States v. Stith*, [5 M.J. 879 (A.C.M.R.1978), *pet. denied*, 7 M.J. 270 (C.M.A.1970)].

*United States v. Sombolay*, 37 M.J. 647, 649 (A.C.M.R.1993) (citing *United States v. Clark*, 22 M.J. 708 (A.C.M.R.1986), *pet. denied*, 24 M.J. 45 (C.M.A.1987)). However, in this case, the appellant merely expressed a general dissatisfaction with the system in his clemency petition but did not attack his counsel's competence. As such, he did not raise the specter of ineffective assistance of coun-

sel to prompt service of the staff judge advocate recommendation on substitute counsel. *See United States v. Swanholm*, 36 M.J. 743 (A.C.M.R.1992). Captain Raddatz, therefore, properly submitted the clemency petition without conflict.

### III. The Providence of the Appellant's Pleas

■ The appellant maintains that his pleas of guilty are improvident because the military judge failed to clarify what the appellant perceives to be an inconsistency between his plea and matters brought out subsequent to that plea.[7] During his unsworn statement to the military judge, the appellant stated that the profits from his drug dealing were being used to rebuild his mother's house which had been decimated by Hurricane Hugo. Additional funds were expended to pay extensive hospital bills incurred as a result of the birth of his son. The appellant now contends that this financial "duress" forced him to commit the crimes and that the military judge did not resolve the viability of this defense. We find that the appellant's self-professed justification for selling cocaine might prove to be a mitigating factor but by no means did it constitute a defense to his crimes.

■ Rejection of a guilty plea "requires that the record of trial show a 'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). This court has previously held that in order for the defense of duress to apply, the accused must be compelled by another to commit the offenses to stave off imminent harm of death or serious bodily injury to the accused or a close relative. *United States v. Logan*, 47 C.M.R. 1 (1973). If the accused has any reasonable opportunity to avoid committing the crime, the defense does not apply. *United States v. Mitchell*, 34 M.J. 970 (A.C.M.R.1992); R.C.M. 916(h); *see also United States v.*

---

7. The appellant directs this court to an additional error in the providence of his pleas. Specifically, the appellant suggests that the military judge's failure to ensure that he understood the contraband nature of the substance he distributed coupled with the judge's failure to define "wrongful" negate his pleas of guilty. We are satisfied, from an examination of the record, the questions

posed by the military judge, and the appellant's responses, that the appellant understood the contraband nature of cocaine as well as the wrongfulness of its distribution. *See United States v. Silver*, 35 M.J. 834 (A.C.M.R.1992). Accordingly, we reject the appellant's invitation to vitiate his pleas of guilty on this basis.

*Rankins,* 34 M.J. 326 (C.M.A.1992). The appellant's espoused motivation in this case—financial duress—does not amount to duress under military law.

## IV. Sentence Appropriateness

■ Upon our own independent review, as well as the appellant's specific request, we are convinced that the sentence is appropriate. The appellant was convicted of selling $7200.00 worth of cocaine to undercover agents. It is clear that the appellant did not divorce this business from his duties as a United States soldier. Rather, he encouraged "customers" to contact him during duty hours and would willingly use duty time to deliver the purchases. The appellant's willingness to cast aside his position in the Army for the lucrative business of illegal drug dealing provides ample justification for the sentence adjudged.

We have examined the other remaining assignments of error to include those personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge LANE and Judge RUSSELL concur.